1  Jeremy E. Shulman (#257582)
     jshulman@afrct.com
2  Yaw-Jiun (Gene) Wu (#228240)
     gwu@afrct.com
3  ANGLIN, FLEWELLING,
   RASMUSSEN,
4    CAMPBELL & TRYTTEN LLP
   199 South Los Robles Avenue, Suite 600
5  Pasadena, California 91101-2459
   Telephone:  (626) 535-1900
6  Facsimile:  (626) 577-7764

7  Attorneys for Defendant
   WELLS FARGO BANK, N.A. (and its
8  division WACHOVIA MORTGAGE),
   formerly known as Wachovia Mortgage,
9  FSB ("Wells Fargo")

10

11                 UNITED STATES DISTRICT COURT

12         CENTRAL DISTRICT OF CALIFORNIA- SOUTHERN DIVISION

13

14  KATHERINE JOHNSON, an            CASE NO.: 8:11-cv-01052-JST-RNB
    individual,
15                                   **RESPONSE TO ORDER TO SHOW**
            Plaintiff,               **CAUSE RE LACK OF SUBJECT**
16                                   **MATTER JURISDICTION**
         v.
17                                   **Oral Argument Respectfully**
    WELLS FARGO BANK, N.A., as       **Requested**
18  Successor in Interest to WACHOVIA
    MORTGAGE; CAL-WESTERN            [Assigned to the Honorable Josephine
19  RECONVEYANCE CORPORATION,        Staton Tucker, District Judge]
    a California Company and Does 1 - 30,
20  Inclusive,
21
22          Defendants.

23

24        Defendant WELLS FARGO BANK, N.A. (and its division WACHOVIA

25  MORTGAGE), formerly known as Wachovia Mortgage, FSB ("Wells Fargo")

26  respectfully submits this Response to the Court's Order to Show Cause re Lack of

27  Subject Matter Jurisdiction (the "OSC")(Dkt. # 30).  Wells Fargo respectfully

28  requests oral argument to address any questions the Court may have.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

# <u>TABLE OF CONTENTS</u>

Page

1.   INTRODUCTION .................................................................................... 1

2.   A NATIONAL BANK IS A CITIZEN OF THE STATE WHERE ITS
     MAIN OFFICE IS LOCATED, AS DESIGNATED IN ITS
     ARTICLES OF ASSOCIATION ............................................................... 3

3.   THE PUBLISHED POST-SCHMIDT DECISIONS
     UNANIMOUSLY REJECT INCLUDING THE PPB TEST IN § 1348 .... 4

     A.   Schmidt Expressed Skepticism for Including the PPB Test. ............ 4

     B.   The Published, Post-Schmidt Decisions Reject the PPB Test. ......... 5

     C.   Numerous Central District Courts Have Also Rejected the PPB
          Test ................................................................................................ 7

4.   UNLIKE WMR, FIRSTAR AND HORTON DID NOT DECIDE
     THE PPB QUESTION PRESENTED TODAY ......................................... 9

5.   THE STATUTORY HISTORY OF § 1348 DOES NOT CALL FOR
     PRECISE JURISDICTIONAL PARITY ................................................ 11

     A.   Imperfect Parity Would Not Be an "Anomalous Result" under
          Schmidt ......................................................................................... 13

     B.   Schmidt's Usage of "No Enduring Rigidity" and "Chameleon" .... 14

6.   ROUSE'S RELIANCE ON AMERICAN SURETY IS WRONG FOR
     SEVERAL REASONS .......................................................................... 16

     A.   American Surety Only Decided the Branch Office Question in a
          Completely Different Era. .............................................................. 16

     B.   American Surety Likely Used the "Principal Place of Business"
          Phrase as a Convenient Substitute for State of Incorporation,
          Adding Nothing to Schmidt ........................................................... 18

     C.   If American Surety Used "Principal Place of Business" as a
          Distinct Concept, Then it is "Clearly Irreconcilable" with
          Supreme Court Precedent. ............................................................. 20

7.   APPLYING THE PPB TEST REQUIRES AN ACT OF CONGRESS ... 21

8.   CONCLUSION .................................................................................... 23

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Albarran v. Wells Fargo Bank,*
  2011 U.S. Dist. LEXIS 59635 (C.D. Cal. May 26, 2011).....................................8

*American Surety v. Bank of Cal.,*
  133 F.2d 160 (9th Cir. 1943) ..............................................................................1

*American Surety v. Bank of Cal.,*
  44 F.Supp. 81 (D. Or. 1941)..............................................................................17

*Black & White Taxicab v. Brown & Yellow Taxicab,*
  276 U.S. 518 (1928) ...........................................................................................19

*Carden v. Arkoma Associates,*
  494 U.S. 185 (1990) ...........................................................................................22

*Citizens & Southern Nat'l Bank v. Bougas,*
  434 U.S. 35 (1977) .............................................................................................15

*Cochran v. Wachovia Bank, N.A.,*
  2010 U.S. Dist. LEXIS 38379 (C.D. Cal. Mar. 9, 2010) .....................................8

*DeLeon v. Wells Fargo Bank, N.A.,*
  729 F. Supp. 2d 1119 (N.D. Cal. 2010) ....................................................5, 7, 11

*Excelsior Funds, Inc. v. J.P. Morgan Chase Bank, N.A.,*
  470 F. Supp. 2d 312 (S.D.N.Y. 2006)..................................................5, 7, 12, 13

*Ferrell v. Express Check Advance of SC, LLC,*
  591 F.3d 698 (4th Cir. 2010)..............................................................................22

*Firstar Bank, N.A. v. Faul,*
  253 F.3d 982 (7th Cir. 2001) ...............................................................................2

*Flores v. Wells Fargo Bank, N.A.,*
  2012 U.S. Dist. LEXIS 32648 (N.D. Cal. Mar. 12, 2012) .....................14, 20, 21

*Forsythe v. Wells Fargo Bank, N.A.,*
  2012 U.S. Dist. LEXIS 44031 (C.D. Cal. Mar. 28, 2012) ....................................9

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Fry v. America's Servicing Co.*,
  C.D. Cal. Case No. CV12-0106 ................................................................................ passim

*Harvey v. Grey Wolf Drilling Co.*,
  542 F.3d 1077 (5th Cir. 2008) ................................................................................ 22

*Hertz v. Friend*,
  130 S. Ct. 1181 (2010) ................................................................................ 9, 18

*Horton v. Bank One, N.A.*,
  387 F.3d 426 (5th Cir. 2004) ................................................................................ 2

*Johnson v. Columbia Properties Anchorage, LP*,
  437 F.3d 894 (9th Cir. 2006) ................................................................................ 22

*Kasramehr v. Wells Fargo Bank N.A., et al.*,
  2011 U.S. Dist. LEXIS 52930 (C.D. Cal. May 17, 2011) ................................ 8

*Kelton Arms Condominiums v. Homestead Ins. Co.*,
  346 F.3d 1190 (9th Cir. 2003) ................................................................................ 9

*Lowdermilk v. U.S. Bank, N.A.*,
  479 F.3d 994 (9th Cir. 2007) ................................................................................ 7

*McNeely v. Wells Fargo Bank, N.A.*,
  2011 U.S. Dist. LEXIS 126970 (C.D. Cal. Nov. 1, 2011) ................................ 8

*Mercantile Nat. Bank of Dallas v. Langdeau*,
  371 U.S. 555 (1963) ................................................................................ 12

*Mfrs. & Traders Trust Co. v. HSBC Bank U.S.A., N.A.*,
  564 F. Supp. 2d 261 (S.D. N.Y. 2008) ................................................................ 7

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) ................................................................................ 20

*Mireles. Granada v. Wachovia Fin.*,
  2012 U.S. Dist. LEXIS 54149 (C.D. Cal. Apr. 18, 2012) ................................ 3

*Mireles v. Wells Fargo Bank, N.A.*,
  2012 U.S. Dist. LEXIS 3871 (C.D. Cal. Jan. 11, 2012) ................................ 2

*Mississippi Publishing Corp. v. Murphree*,
  326 U.S. 438 (1946) ................................................................................ 3, 20, 21

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Moreno v. Wells Fargo Bank, N.A.*,
   2011 U.S. Dist. LEXIS 146195 (N.D. Cal. Dec. 21, 2011) .................................6

*Mount v Wells Fargo Bank, N.A.*,
   2008 U.S. Dist. LEXIS 98193 (C.D. Cal. Nov. 24, 2008) .............................2, 8

*Newman-Green, In. v. Alfonzo-Larrian*,
   490 U.S. 826 (1989) .................................................................................12

*Nguyen v. Wells Fargo Bank, N.A.*
   749 F. Supp. 2d at 1028 (N.D. Cal. 2010)................................................7

*Rouse v. Wachovia Mortg., FSB*,
   2012 U.S. Dist. LEXIS 6962 (C.D. Cal. Jan. 13, 2012)...............................2

*Sami v. Wells Fargo Bank*,
   2012 U.S. Dist. LEXIS 38466 (N.D. Mar. 21, 2012)..................................6

*Shirwo v. JP Morgan Chase*,
   2009 U.S. Dist. LEXIS 70345 (C.D. Cal. July 30, 2009) ............................8

*Southern Ry. Co. v. Allison*,
   190 U.S. 326, 23 S.Ct. 713, 47 L.Ed. 1078 (1903) ...........................17, 19

*St Louis & San Francisco Ry. Co. v. James*,
   161 U.S. 545, 16 S.Ct. 621, 40 L.Ed. 802 (1896) ..........................17, 19

*Stewart v. Wachovia Mortg. Corp.*,
   2011 U.S. Dist. LEXIS 85822 (C.D. Cal. Aug. 2, 2011) ...........................2, 8

*Taguinod v. World Sav. Bank*,
   2010 U.S. Dist. LEXIS 140509 (C.D. Cal. Dec. 2, 2010) ............................8

*Tse v. Wells Fargo Bank, N.A.*,
   2011 U.S. Dist. LEXIS 6796 (N.D. Cal. Jan. 19, 2011) ............................5

*United States v. Perlaza*,
   439 F.3d 1149 (9th Cir. 2006)..................................................................10

*Wachovia Bank, N.A. v. Schmidt*,
   546 U.S. 303 (2006) ...................................................................................1

*Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*,
   653 F.3d 702 (8th Cir. Sept. 2, 2011).........................................................2

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

**FEDERAL STATUTES**

12 U.S.C. §§ 1-216d ........................................................................ 22

12 U.S.C. § 22 ............................................................................... 19

12 U.S.C. § 36(g)(3)(B) ........................................................ 5, 10, 21

12 U.S.C. §§ 36(j), 85, 92 ................................................................ 15

12 U.S.C. §§ 52, 55, 75 , 182 ......................................................... 15

12 U.S.C. § 94 ............................................................................... 15

12 U.S.C. § 1332 ........................................................................... 21

28 U.S.C. § 1332(c)(1) ..................................................................... 8

28 U.S.C. § 1332(d)(10) ................................................................. 22

28 U.S.C. § 1348 ............................................................................. 1

28 U.S.C. § 1391(c) ....................................................................... 15

28 U.S.C.A. § 41(16) ..................................................................... 17

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art III, § 2 ...................................................................... 1

1

## 1.   **INTRODUCTION**

2        Wells Fargo wishes to thank the Court for the opportunity to brief this important

3   question of law.  In *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006), the Supreme

4   Court interpreted 28 U.S.C. § 1348, the statute applicable to national banks, and held

5   that a national bank is a citizen where its "main office" is located, as designated in its

6   articles of association.  As the Court noted, *Schmidt* explicitly declined to decide

7   whether the principal place of business ("PPB") test also applies under § 1348.

8        The Court's OSC asked Wells Fargo to show cause why the PPB, as an addition

9   to the main office, should not also be used to determine the citizenship of a national

10  bank, citing the Court's decision in *Fry v. America's Servicing Co.*, Case No. CV12-

11  0106 (Doc. No. 30 (Order of Arp. 11, 2012)("*Fry*").

12        As a preliminary matter, Wells Fargo respectfully submits that the Court should

13  err on the side of caution.  As the Court well knows, unlike original jurisdiction,

14  diversity jurisdiction is a species of jurisdiction that has been delegated to Congress by

15  the Constitution.  U.S. Const. art. III, § 2, cl. 2 ("In all the other Cases before

16  mentioned, the supreme Court shall have appellate Jurisdiction, both as to Law and

17  Fact, with such Exceptions, and under such Regulations as the Congress shall make.")

18  (original capitalization).

19        Here, Congress has <u>not</u> indicated that the PPB test should apply to national banks

20  for purposes of diversity jurisdiction.  In fact, Congress stopped legislating in the area of

21  national bank citizenship in 1948, when the state of incorporation was the sole test for

22  citizenship for corporations.  *Schmidt*, at 306 ("and, <u>since 1958</u>, also of [the

23  PPB]")(emphasis added).  As detailed below, *American Surety v. Bank of Cal.*, 133 F.2d

24  160 (9th Cir. 1943), which held that the PPB test applies for a corporation's citizenship,

25  was likely using the "principal place of business" phrase as a convenient substitute for

26  "state of incorporation."  Given this constitutional and historical backdrop, Wells Fargo

27  respectfully suggests that the Court should be cautious in applying the PPB test today.

28        As to the exact issue under consideration, as the Court knows, recently, the

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

Eighth Circuit in *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 710 (8th Cir. Sept. 2, 2011)("*WMR*"), rejected applying the PPB test to § 1348 because that test of citizenship did not exist until 10 years after the enactment of § 1348.  However, Wells Fargo also wishes to point out that the post-*Schmidt*, published decisions have uniformly declined to apply the PPB test to § 1348.  In fact, there is not a single Federal Reporter or Federal Supplement decision applying the PPB test after *Schmidt*.

Furthermore, the pre-*Schmidt* Circuit decisions on this subject, *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 994 (7th Cir. 2001), *Horton v. Bank One, N.A.*, 387 F.3d 426, 436 (5th Cir. 2004), and *American Surety*, were actually deciding whether a branch office should be used for citizenship. As detailed below, this was the exact factual situation in *Schmidt*.  If even the Supreme Court could not reach the PPB issue under the exact circumstances, then those earlier Circuit decisions could not possibly be precedential on the PPB issue today.

Just recently, Judge Morrow in *Mireles v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 3871 (C.D. Cal. Jan. 11, 2012)(J. Morrow), abandoned her previous decision in *Stewart v. Wachovia Mortg. Corp.*, 2011 U.S. Dist. LEXIS 85822 (C.D. Cal. Aug. 2, 2011)(J. Morrow), which had applied the PPB test (see *Fry*, p. 4 citing *Stewart*), in part by pointing out that *Firstar* and *Horton* only purported to decide the issue.  Judge Morrow also found that when § 1348 was enacted in 1948, jurisdictional parity with corporations was achieved, because at that time state-chartered corporations and banks were citizens of only one (1) state, their state of incorporation, analogous to a national bank's main office.  *Mireles*, at * 66.  Another Court of this District, Judge Feess, has also abandoned his previous decision applying the PPB test to a national bank based on similar reasoning.  Judge Feess had authored the decision in *Mount v Wells Fargo Bank, N.A.*, 2008 U.S. Dist. LEXIS 98193 (C.D. Cal. Nov. 24, 2008)(J. Feess).

As to *American Surety*, the reliance thereon by *Rouse v. Wachovia Mortg., FSB*, 2012 U.S. Dist. LEXIS 6962 (C.D. Cal. Jan. 13, 2012)(J. Gee), is curious because *American Surety* held that the "citizenship of a corporation is fixed by its principal place

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

of business."  However, the PPB test for citizenship did not come about until 1958, fifteen (15) years after *American Surety* was decided.  As detailed below, *American Surety* was either using PPB as a convenient shorthand for the state of incorporation, in which case it adds nothing to *Schmidt*.  Or, if *American Surety* was using the PPB as a separate and distinct test for citizenship, albeit for corporations, then it is "clearly irreconcilable" with long standing Supreme Court precedent.  See e.g. *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, fn. 2, 442 (1946)("For purposes of jurisdiction a corporation is a citizen or resident <u>only</u> of the state of its organization.") (emphasis added).

In fact, earlier this month, Judge Nguyen of this Court discharged an Order to Show Cause which had cited *Rouse*, ultimately finding in favor of *WMR* and *Mireles*. *Granada v. Wachovia Fin.*, 2012 U.S. Dist. LEXIS 54149, at * 2 (C.D. Cal. Apr. 18, 2012) (J. Nguyen)(discharging Order to Show Cause);(Dkt. No. 20 (Order to Show Cause, citing *Rouse*) in Case No. 2:11-cv-10772-JHN-JCGx).

Finally, consistent with the constitutional mandate to Congress on diversity jurisdiction, Congress has applied the PPB test to limited liability companies, but only for class action.  Notably, the Supreme Court had refused to apply the PPB test to non-corporations; leaving that decision to Congress.

For all the foregoing reasons, the OSC should respectfully be discharged.  Wells Fargo respectfully request oral argument[1] in order to address any questions that the Court may have on this complicate and important legal issue.

## 2.   <u>A NATIONAL BANK IS A CITIZEN OF THE STATE WHERE ITS MAIN OFFICE IS LOCATED, AS DESIGNATED IN ITS ARTICLES OF ASSOCIATION</u>

The citizenship of a national bank is governed by 28 U.S.C. § 1348, which was enacted in 1948 and <u>remains unchanged</u>.  *Schmidt*, 311-312.  The second paragraph of

---

[1] Respectfully, undersigned counsel is available on the following of the Court's Civil Motion dates: May 14 and 21, June 4, 11, 18 and 25.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  § 1348 governs citizenship:  "All national banking associations shall, for the purposes of
2  all other actions by or against them, be deemed citizens of the States in which they are
3  respectively **located**."  (emphasis added).

4       In *Schmidt*, the Supreme Court construed the term "located" in § 1348, and it
5  concluded that, for purposes of § 1348, "a national bank . . . is a citizen of the State **in**
6  **which its main office, as set forth in its articles of association, is located**."  *Id.* at 307
7  (emphasis added).  The "main office" is where a national bank's "operations of discount
8  and deposit are to be carried out." *Id*., at 307, fn. 1.

9       In this case, Wells Fargo Bank, N.A.'s articles of association is evidence that its
10  main office is located in Sioux Falls, South Dakota, and accordingly, it is a citizen of
11  only South Dakota.  (Exh. 1[2] (Arts. of Ass'n at § II.1.)).

12       Under § 1348 and *Schmidt*, the main office <u>must</u> be used to assess citizenship and
13  Wells Fargo is clearly a citizen of South Dakota.  The importance of this will be
14  apparent in the context of *American Surety*, which did not address even the potential use
15  of the main office test.

### 3.  THE PUBLISHED POST-*SCHMIDT* DECISIONS UNANIMOUSLY REJECT INCLUDING THE PPB TEST IN § 1348

18       While *Schmidt* did not actually decide whether the PPB test should be used in
19  conjunction with the main office test, *Schmidt* did express doubt on adopting the PPB as
20  an additional test.  Importantly, the <u>unanimous</u> published decisions interpreting *Schmidt*
21  have all rejected including the PPB test as an additional test for citizenship.

### A.  *Schmidt* Expressed Skepticism for Including the PPB Test.

23       In *Schmidt*, the Supreme Court considered expanding the definition of "located"
24  to include a bank's PPB, <u>but did not do so</u>.  *Id.* at 315 and fn. 8.

25       First, the Supreme Court pointed out that, <u>unlike PPB</u>, "main office" and
26  "located" are linked by statute.  *Id.*, at 307, fn. 1 ("The State in which the main office is

27
28  [2] Unless otherwise noted, all references to exhibits are to the exhibits attached to Wells Fargo's Request for Judicial Notice in Support of this Response.

located qualifies as the bank's 'home State' under the banking laws." 12 U.S.C.
§ 36(g)(3)(B)."). For the Court's reference, 12 U.S.C. § 36(g)(3)(B) reads: "**(B) Home
State** [¶] The term "home State" means the State in which the <u>main office</u> of a national
bank is <u>located</u>." (original bold)(underline added).

Next, the Supreme Court contrasted the language of the statute governing
citizenship of corporations (section 1332(c)(1)) with the "counterpart" statute governing
the citizenship of national banks (section 1348), and it pointedly observed that while
section 1332(c)(1) prescribed that a corporation is a citizen of <u>both</u> its "state of
incorporation *and* where it has its principal place of business," § 1348 contained **no
reference** to a bank's PPB. *Id.* at 317, fn. 9 (italics in original).

As the Court noted, footnote 9 is not dispositive on this issue. (*Fry*, p. 3).
However, the published cases <u>uniformly</u> agree that in footnote 9 of *Schmidt,* the
Supreme Court disapproved of including the PPB test in § 1348 and that it was <u>not</u>
instructing the lower courts to apply the PPB test to create jurisdictional parity with
corporations, something that the Supreme Court could have done itself. "[T]he fairest
reading of footnote nine is that the Supreme Court <u>expressed skepticism</u> over whether
the term 'locate' in §1348 included a national bank's 'principal place of business,' in
view of the absence of such term in the statute." *Excelsior Funds, Inc. v. J.P. Morgan
Chase Bank, N.A.*, 470 F. Supp. 2d 312, 317 (S.D.N.Y. 2006). "Moreover, in footnote
9, the Court recognized the imperfect parity between corporations and national banks."
*DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1123 (N.D. Cal. 2010);
*accord WMR*, at 708 (citing *Excelsior's* reading of footnote 9 with approval); *see also
Tse v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 6796, at **5-6 (N.D. Cal. Jan.
19, 2011)("Footnote nine seems <u>to accept</u> that in <u>a small number of cases</u>, the fact that
corporations and national banks live by different citizenship rules <u>will have some
practical significance, however scant</u>.") (emphasis added).

### B.   <u>The Published, Post-*Schmidt* Decisions Reject the PPB Test.</u>

Just a few months ago, the Eighth Circuit Court of Appeals in *WMR* rejected

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

including the PPB test in § 1348, because that test was not a test for citizenship until 1958, **ten (10) years after § 1348 was enacted**:

> In 1948, when Congress last amended § 1348, it had not yet created principal-place-of-business citizenship. At that time the term "located" referred to the state in which the national bank had its main office, as designated by its articles of association. Moreover, when Congress introduced principal-place-of-business citizenship for state banks and corporations in § 1332(c)(1), it made no reference to jurisdictional parity, nor to national banks or § 1348.  And nothing in §1348 indicates that it would incorporate by reference any subsequent change in the statutes governing jurisdiction over state banks and corporations. These circumstances strongly suggest that, with the passage of § 1332(c)(1), Congress reconfigured the jurisdictional landscape of state banks and state corporations, but left that of national banks undisturbed.  [¶¶]
>
> Had Congress wished to retain jurisdictional parity in 1958, it could have unequivocally done so. It did not, and consequently the concept no longer applies. Whether it ought to be revived is a policy question for Congress, not the federal courts. We will not import a jurisdictional concept into § 1348 that was unknown at the time of its adoption. Accordingly, we hold that, pursuant to § 1348, a national bank is a citizen only of the state in which its main office is located.

*Id.*, at 708 (emphases added); *Moreno v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 146195 (N.D. Cal. Dec. 21, 2011); *Sami v. Wells Fargo Bank*, 2012 U.S. Dist. LEXIS 38466 (Mar. 21, 2012)(N.D. Cal. 2012)(both following *WMR*).

      *Rouse* criticizes *WMR* on this point by saying that it was doubtful that Congress actually considered the citizenship of a national bank in enacting 1332(c)(1), in 1958. (*Id.*, at *40).  While this criticism has some appeal, given the constitutional mandate to Congress on the scope of diversity jurisdiction, briefly referenced in the introduction

1  above, even an "oversight" by Congress should be accorded its due deference.

2  Even before *WMR*, the published District Court decisions all agree that a national

3  bank is only a citizen where it has its "main office," South Dakota in the case of Wells

4  Fargo:  *Excelsior Funds*, 470 F. Supp. 2d at 320 (applying the PPB test to § 1348 was

5  not possible because PPB did not exist when § 1348 was adopted); *DeLeon*, 729

6  F. Supp. 2d at 1124 ("Wells Fargo is not a citizen of California….  Consequently, the

7  court concludes that Wells Fargo is a citizen of the state in which its main office, as

8  specified in its articles of association, is located"); *Nguyen v. Wells Fargo Bank, N.A.*,

9  749 F. Supp. 2d at 1028 (N.D. Cal. 2010) ("Wells Fargo is a citizen of South Dakota for

10 purposes of diversity."); *Mfrs. & Traders Trust Co. v. HSBC Bank U.S.A., N.A.*, 564

11 F. Supp. 2d 261, 263 (S.D. N.Y. 2008)(following *Excelsior*).

12 Although the Ninth Circuit has not yet explicitly decided the issue since *Schmidt*,

13 it would likely not include the PPB test in light of *Schmidt*:  "Defendant [U.S. Bank] is a

14 citizen of Ohio because its main office is located in that state . . . ."  *Lowdermilk v. U.S.

15 Bank, N.A.*, 479 F.3d 994, 997 (9th Cir. 2007) (emphasis added)(citing *Schmidt*, 546

16 U.S. at 305–307).  Importantly, *Lowdermilk* did not even consider U.S. Bank's PPB,

17 which is in Minnesota.[3]

18 **C.    Numerous Central District Courts Have Also Rejected the PPB Test**

19 As mentioned above, recently Judge Morrow reversed course and followed

20 *Excelsior*'s historically-based reasoning to reject including the PPB test in § 1348:

21      Recognizing Congress's intent to create parity, the *Excelsior* court noted

22      that at the time § 1348 was enacted, a state bank was only a citizen of a

23      single state: the state in which it was incorporated.  [*Excelsior*, 470

24      F.Supp.2d] at 319.  As a result, jurisdictional parity at the time the statute

25      was passed was achieved by limiting a national bank's citizenship to a

26      single location.

27

28 [3] *See* http://phx.corporate-ir.net/phoenix.zhtml?c=117565&p=irol-contact.

*Mireles*, at *66 (emphasis added) & fn. 15 (acknowledging departure from *Stewart*).

Echoing the Eighth Circuit's decision in *WMR* holding that any decision to apply the PPB test <u>now</u> should be left up to Congress (*WMR*, at 708), this Court similarly stated that "<u>one can only speculate as to what Congress' intent</u> would have been had it known that the citizenship of state banks would be changed decades in the future." *Mireles*, at *68 (emphasis added).

Nor is Judge Morrow the only Court to abandon the PPB test.  In *Mount, supra*, Judge Fees also applied the PPB test.  Two and a half years later, Judge Feess re-examined the issue of Wells Fargo Bank, N.A.'s citizenship in *Kasramehr v. Wells Fargo Bank N.A., et al.,* 2011 U.S. Dist. LEXIS 52930 (C.D. Cal. May 17, 2011)(J. Fees), and reversed his earlier conclusion in *Mount*.

Although decided before *Mireles* and *WMR*, *Kasramehr* is based largely on the same reasoning.  *Kasramehr* noted that the PPB provision in 28 U.S.C. § 1332(c)(1), applicable to corporations, did not come into existence until ten (10) years after § 1348 was enacted, and that: "If Congress had intended for national banks likewise to be deemed citizens of the states of their principal places of business, it likely would have similarly amended § 1348 to contain a reference to national banks' 'principal places of businesses.'  Its failure to do so suggests that **Congress did <u>not</u> intend for a national bank to be deemed a citizen of the state of its principal place of business**." *Id*. at **5-6 (emphases added).

In fact, many Courts of the Central District have refused to apply the PPB test. *Cochran v. Wachovia Bank, N.A.,* 2010 U.S. Dist. LEXIS 38379, at *3 (C.D. Cal. Mar. 9, 2010)(J. Snyder); *Taguinod v. World Sav. Bank*, FSB, 2010 U.S. Dist. LEXIS 140509, at **4-5 (C.D. Cal. Dec. 2, 2010)(J. Wilson); *Albarran v. Wells Fargo Bank*, 2011 U.S. Dist. LEXIS 59635, at *4 (C.D. Cal. May 26, 2011)(J. Selna); *Shirwo v. JP Morgan Chase*, 2009 U.S. Dist. LEXIS 70345, at **3-4 (C.D. Cal. July 30, 2009)(J. Gutierrez); *McNeely v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 126970, at *9 (C.D. Cal. Nov. 1, 2011)(J. Carter)(noting *Mount's* reversal and finding only South

Dakota citizenship); *Forsythe v. Wells Fargo Bank, N.A.*, No. CV 12-00139, 2012 U.S. Dist. LEXIS 44031, at * 5 (C.D. Cal. Mar. 28, 2012)(J. Carney)("As the Supreme Court has noted, section 1348 governs national banks and section 1332(c)(1) governs corporations.").

Wells Fargo respectfully requests that this Court follow the <u>unanimous</u>, <u>published</u>, post-*Schmidt* decisions (as well as the numerous unpublished Central District decisions) on this issue.  In particular *WMR,* should be followed for the sake of uniformity, as it is the highest, post-*Schmidt* decision on this issue to date.  *See Hertz v. Friend*, 130 S. Ct. 1181, 1192-93 (2010)(uniformed interpretation of jurisdictional statute preferred).

Departing from *WMR* would create a circuit split of authority, a highly disfavored outcome.  *Kelton Arms Condominiums v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003)("We recognize that procedural rules are best applied uniformly, and we decline to create a circuit split unless there is a compelling reason to do so.").  A circuit split would also create the odd situation where Wells Fargo's citizenship would depend on <u>where</u> it is being sued.

### 4.   <u>UNLIKE *WMR, FIRSTAR* AND *HORTON* DID NOT DECIDE THE PPB QUESTION PRESENTED TODAY</u>

As mentioned by the Court, *Firstar* and *Horton* are two (2) pre-*Schmidt* decisions that (purportedly) held that a national bank was a citizen of both its main office and additionally, the bank's PPB.  *Horton* mostly follows *Firstar*, citing the latter 16 times.

However, *Firstar* and *Horton* did not actually decide the PPB question.  In *Schmidt*, the Supreme Court said that it will not decide the PPB question (at 315, fn. 8) because the bank's main office and PPB were in the same state.  *Id.*, at 317, fn. 9.

This was the same exact situation in both *Firstar* and *Horton*.  In *Firstar*, Firstar Bank, N.A. "identified its principal place of business as Ohio, … The state identified in Firstar's organization certificate as the place where its operations are carried on [a.k.a. "main office"] is also Ohio." *Firstar*, at 984.  In *Horton*, "Bank One [N.A.] claims that

CASE NO.: 8:11-CV-01052-JST-RNB
RESPONSE TO OSC

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   it is a citizen only of Illinois – the state of its principal place of business and the state

2   listed in its organization certificate." *Horton*, at 428.

3         In both cases, the party challenging diversity was a citizen of a branch office

4   state. *Firstar*, at 985 (Faul moved to dismiss… because Firstar has branches in

5   Illinois…"); *Horton*, at 428 ("Horton argues that Bank One is a citizen of Texas because

6   it has branches in Texas.").

7         If <u>even the Supreme Court declined to decide the PPB question</u> because that

8   portion was "not … necessary" to the case (see *Schmidt*, at fns. 8 & 9), how can *Firstar*

9   *and Horton* <u>purport to do so under the exact facts</u>?

10        In fact, *Mireles* recently pointed out this flaw in *Firstar* and *Horton*:

11        Plaintiffs' reliance on *Horton* [citation] and *Firstar* [citation] is <u>misplaced</u>.

12        While those cases contained <u>language suggesting</u> that a national banking

13        association may be a citizen of both its state of incorporation and the state

14        of its principal place of business, the <u>holdings in *Horton* and *Firstar*</u>

15        <u>addressed whether a national bank is a citizen of every state in which it</u>

16        <u>operates a branch</u>.

17  *Mireles*, at *69, fn. 116 (emphases added).  Under Ninth Circuit law, the PPB portion of

18  *Firstar* and *Horton* would not be precedential, since regardless of how those Courts

19  came out on whether § 1348 included the PPB test, diversity would have remained

20  intact.  *United States v. Perlaza*, 439 F.3d 1149, 1159 (9th Cir. 2006) (precedential

21  value of prior decisions limited to issues necessary to reach the decision).

22        For this reason alone, *Firstar* and *Horton* should be disregarded.

23        Additionally, neither case analyzed the statutory link between "main office" and

24  "located" provided in 12 U.S.C. § 36(g)(3)(B).  *See Firstar* and *Horton*.  As pointed out

25  in Section 3A above, the Supreme Court pointed out that the statutory definition of

26  "home State" is where a national bank's "main office" is "located."  It is doubtful that

27  *Firstar* and *Horton* would have felt so free to add the PPB test had they examined §

28  36(g)(3)(B).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

In contrast to *Firstar* and *Horton, WMR* actually decided the issue presented today because one of the defendants there was a California citizen. *WMR*, at 705 ("Apellant Synoran [an LLC] is a citizen of several states, including California and would have destroyed complete diversity had WMR adopted the PPB test. Appellants maintain that Wells Fargo is a citizen of California, its principal place of business, and of South Dakota, where its main office is located.").

As the most recent of the three out-of-Circuit decisions, decided with the benefit of the landmark decision in *Schmidt*, and the only one that actually decided whether § 1348 included the PPB test, *WMR* should be followed, not *Firstar and Horton. Cf Rouse*, at *37 ("Even if the Court were not bound by *American Surety*, the Court would still follow the persuasive opinions in *Firstar* and *Horton* rather than the less convincing arguments made by the majority in *WMR e-Pin*.").

## 5. THE STATUTORY HISTORY OF § 1348 DOES NOT CALL FOR PRECISE JURISDICTIONAL PARITY

One of the crucial flaws in *Firstar, Horton,* and *Rouse* is that they all assume that precise jurisdictional parity with state-chartered corporations, as opposed to imperfect parity, is still necessary for § 1348. *Cf DeLeon,* 729 F. Supp. 2d at 1123 ("Moreover, in footnote 9, the Court recognized the imperfect parity between corporations and national banks."). This simply has no basis in the statute.

It is true that in 1882, the predecessor to § 1348 stated that the jurisdiction for national banks "shall be same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States…" *Schmidt*, at 310 (quoting Act of July 12, 1882, § 4, 22 Stat. 163 and adopting the short hand of "state banks"). First of all, this version does not even have the operative term "located" that currently exists in § 1348. This limits its interpretative aid.

More to the point, in 1887, when the present "located" phrase was enacted the reference to "banks not organized under any law of the United States" was replaced with "between individual citizens of the same State." *Schmidt*, at 310-11 (quoting Act

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

Mar. 3, 1887, § 4, 24 Stat. 554-55).  In fact, by 1911, under the version of the statute decided by *American Surety*, all references to jurisdictional parity with another entity or person has been excised.  *Schmidt*, at 312 (quoting Act Mar. 3, 1887, § 4, 24 Stat. 554-55).  Against this statutory history, where the parity with state banks language disappeared three (3) versions and more than a century ago, there is no reason why precise jurisdictional parity with state banks and corporations should be the rule <u>today</u>.

On this point the Court points out that the Supreme Court, in discussing the 1887 version had held that "the 1887 Act 'sought to limit … the access of national banks to, and their suitability in, federal courts to the same extent to which non-federal banks [were] so limited."  *Fry*, at p. 2, quoting *Schmidt*, at 311, which quoted *Mercantile Nat. Bank of Dallas v. Langdeau*, 371 U.S. 555, 565-66 (1963).  However, it should be kept in mind that in 1887, state banks and corporations were citizens of only 1-state, their state of incorporation.  *See* § 6B, infra.  "Individual citizens," the phrase actually used in the 1887 statute, still have only 1 state citizenship, that of their domiciliary state. *Newman-Green, In. v. Alfonzo-Larrian*, 490 U.S. 826, 828 (1989).

As the leading District Court decision on this issue explained:

This change [to "individual citizens" in 1887] undermines the argument that the concept of jurisdictional party underlying § 1348 is a broad concept designed to trace statutory changes to the citizenship of state banks through the term 'located.'  Rather it suggests that the concept of jurisdictional parity underlying the statute is more limited, based on the then-existing understanding of citizenship, <u>which would have been a single state for either state banks or individual citizens</u>.

*Excelsior*, at 320 (emphasis added).  In *Langdeau*, when the Supreme Court summarized the 1887 statute (which plainly stated "individual citizens") as giving national banks jurisdictional parity with state banks, that was because state banks had single state citizenship in 1887, like individual citizens.  It was not an instruction for to have permanent parity with state banks.  Importantly, *Langdeau* was also deciding a now-

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   repealed venue statute. *Id*., at 556.

2   **A.     Imperfect Parity Would Not Be an "Anomalous Result" under *Schmidt***

3   Nor does *Schmidt* instruct otherwise.  While it is true that *Schmidt* made

4   comparisons between national banks and state chartered corporations to avoid what it

5   calls an "anomalous result" (*Schmidt*, at 317), the "anomalous result" it wished to avoid

6   was to have a national bank be treated as a citizen in 16, and potentially, all 50 States

7   due to their branch offices.  *Schmidt*, at 317.

8   In fact, *Schmidt's* reliance on the principle of jurisdictional parity with state

9   chartered corporations (*Fry* at p. 4) was really only to (politely) highlight the absurd

10  result reached by the Fourth Circuit in adopting the branch office as a test for

11  citizenship.  *Id.*, at 317 ("Accordingly, while corporations ordinarily rank as citizens of

12  at most 2 States, Wachovia, under the Court of Appeals <u>novel</u> citizenship rule, would be

13  a citizen of 16 States.")(emphasis added).

14  Wells Fargo respectfully submits that having state corporations be citizens of 2

15  states, pursuant to 28 U.S.C. § 1332(c)(1), while having national banks be citizens of

16  only 1 state (i.e. incomplete parity), pursuant to § 1348, would not be "anomalous":

17  Some courts have held that because Congress eliminated federal question

18  jurisdiction for national banks in 1882 in order to expressly create

19  jurisdictional parity with state banks and corporations, the "located"

20  language should be interpreted to include a national bank's main office and

21  its principal place of business; otherwise, a state bank could be a citizen of

22  two states while a national bank could only be a citizen of one.  [citation]

23  There is nothing in the language of *section 1348*, however, which requires

24  such precise jurisdictional parity. [¶]

25  To the contrary, the 1882 statute's unambiguous statement that federal

26  jurisdiction over national banks "shall be the same as, and not other than"

27  jurisdiction over state-chartered entities was eliminated by the 1887

28  amendment. See *WMR e-PIN, 653 F.3d at 709* (noting that "the language

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

that expressly established parity between national banks and state banks was removed in 1887"). None of the subsequent iterations of the jurisdiction provisions, including *section 1348*, contain analogous language that requires jurisdictional parity. Moreover, to the extent that jurisdictional parity matters, it exists generally, if not precisely, when "located" in *section 1348* is interpreted to refer only to the state of a national bank's main office. When so construed, *section 1348* makes national banks citizens of one state, whereas *section 1332(c)(1)* makes state banks citizens of--at most--two states. Thus, interpreting "is located" in *section 1348* to refer only to a national bank's main office <u>avoids the "anomalous result"</u> the Supreme Court worried about when it considered whether national banks are citizens of every state in which they conduct business. See *Schmidt, 546 U.S. at 317* (noting that if Wachovia were a citizen of every state in which it conducted business, it would be a citizen of 16 states).

*Flores v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 32648, at **12-13 (N.D. Cal. Mar. 12, 2012)(section entitled "Precise Jurisdictional Parity Is Not Required.").

On the other hand, "perfect" jurisdictional parity would essentially replace § 1348 with § 1332(c)(1), a statute with vastly different language. Wells Fargo respectfully submits that such a fundamental change should be left to Congress.

### B.   *Schmidt*'s Usage of "No Enduring Rigidity" and "Chameleon"

As the Court points out (*Fry*, p. 1-2), *Schmidt* said that "located" was not a word of "enduring rigidity, but one that gains its precise meaning from context." *Schmidt*, at 307. However, a close examination of *Schmidt* shows that the Supreme Court used the "no enduring rigidity" phrase as to "located" to point out the multiple lending-related uses of the latter in Title 12:

First, the term 'located,' as it appears in the National Bank Act, has no fixed, plain meaning. In some provisions, the word unquestionably refers to a single place: the site of the banking association's designated main

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   office. [citing 12 U.S.C. §§ 52, 55, 75 , 182].  In other provisions, 'located'

2   apparently refers to or includes branch offices.  [citing 12 U.S.C. §§ 36(j),

3   85, 92]  Recognizing the <u>controlling significance of **context**</u>, we stated in

4   *Bougas*, regarding a venue provision for national banks:  'There is no

5   <u>enduring rigidity</u> about the word 'located.''

6   *Schmidt*, at 314 (emphases added).  Importantly, the Supreme Court's use of the "no

7   enduring rigidity" language was used to describe <u>changes in **context of usage**</u>, <u>not</u>

8   <u>changes **in time**</u> or with laws not governing national banks.

9       Similarly, *Schmidt* also used word "chameleon," to describe "located" (at 318),

10  only after the Court spent a great deal of time distinguishing its prior holding in *Citizens*

11  *& Southern Nat'l Bank v. Bougas*, 434 U.S. 35 (1977).  *Schmidt,* at 315-317 ("Finally

12  *Bougas* does not control the meaning of  § 1348.").

13      In *Bougas*, the Court held that "located" in an old venue statute meant that a

14  national bank may be sued "in any county or city where the bank maintained a branch

15  office." *Schmidt*, at 315, citing *Bougas*, at 44-45.  The Fourth Circuit had relied, in part,

16  on *Bougas* to find that a national bank is a citizen of every State where a branch was

17  "located," giving the same meaning to "located" for purposes of jurisdiction and venue.

18  *Schmidt*, at 313.

19      *Schmidt* said that the Fourth Circuit was wrong to do so because "venue and

20  subject matter jurisdiction are not concepts of the same order."  *Id.*, at 316.  The Court

21  went on to use "chameleon" as follows:

22       To summarize, 'located,' as its appearances in the banking laws reveal

23       [internal citations] is a <u>chameleon</u> word; its meaning depends on the

24       <u>context</u> in and <u>purpose</u> for which it is used. [¶] In the <u>context of venue</u>,

25       'located' may refer to multiple places, for a venue prescription, *e.g.*, the

26       current and former *12 U.S.C. § 94*, presupposes subject-matter jurisdiction

27       and simply delineates *where* within a given judicial system a case may be

28       maintained. See, *e.g.*, *28 U.S.C. § 1391(c)* (for <u>venue purposes</u>, 'a

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  corporation shall be deemed to reside in any judicial district in which it is

2  subject to personal jurisdiction at the time the action is commenced').

3  *Id*., at 318 (emphasis added).

4   Wells Fargo respectfully submits that the use of "no enduring rigidity" and

5  "chameleon" by the Court meant that "located" can have different meanings, depending

6  on if it was being used for venue or for jurisdiction, or for the multitude of lending-

7  related purposes in Title 12.  In either case, the foregoing language in *Schmidt* was not

8  an instruction to the lower courts to interpret "located" to keep up with changes in the

9  law governing the citizenship of state-chartered corporations.

10  **6.   *ROUSE'S* RELIANCE ON *AMERICAN SURETY* IS WRONG FOR**

11  **SEVERAL REASONS**

12   *Rouse* held that *American Surety* (from 1943) is binding precedent for providing

13  the PPB as an <u>additional and supplemental</u> test of a national bank's citizenship to the

14  main office test set by *Schmidt* more than 60 years later.  (*Rouse*, §§ 3.a & b).  *Fry*, p. 3

15  (citing *Rouse* as giving effect to both *American Surety* and *Schmidt*).

16   First and foremost, placed in its 1943 context, *American Surety*'s use of the PPB

17  language was either as a convenient substitute for the state of incorporation (in which

18  case it adds nothing to *Schmidt*) or if not as a substitute, then totally in conflict with

19  Supreme Court jurisprudence.  In fact, not even *Firstar and Horton* used *American*

20  *Surety* to find two (2) state citizenship for a national bank.

21   **A.   *American Surety* Only Decided the Branch Office Question in a**

22   **Completely Different Era.**

23  Under the 1911 predecessor to § 1348, *American Surety* held:

24  <u>No case defining "located," in this connection, has come to our attention.</u>

25  The quotation from the cited [prior statutory] section reveals a departure

26  from the old rule that the incorporation of national banking associations

27  under the laws of the United States is a basis for federal jurisdiction.

28  [citation] There would appear to be a close **analogy** between such a bank

and a corporation national in scope.  The citizenship of a corporation is fixed by **its principal place of business**, a rule which prevails even though it extends its field of endeavor into other states under the sanction of the laws of such other states.  [*St Louis & San Francisco Ry. Co. v. James, 161 U.S. 545, 16 S.Ct. 621, 40 L.Ed. 802* [(1896)]*; Southern Ry. Co. v. Allison, 190 U.S. 326, 23 S.Ct. 713, 47 L.Ed.  1078* [(1903)].  In addition, a logical interpretation of the phraseology of 28 U.S.C.A.  § 41(16) leads to the conclusion that the "States in which they [national banking associations] are respectively located" are those states in which their principal places of business are maintained.

*American Surety*, at 161-62 (original italics; other emphases added).  The 1911 version of § 1348 was substantively similar to the current version.  *See Schmidt*, at 312, fn. 6.

First and foremost, *American Surety* was not deciding the question presented today and addressed by *WMR*: whether a national bank's PPB should be used to assess citizenship in addition to its main office.  Instead, *American Surety* was answering whether the branch office of a national bank should be used to assess citizenship, the same exact question in Schmidt.  *American Surety*, at 162 ("citizenship in various states upon the basis of branch business offices…")(emphasis added).

The bank in *American Surety*, like the bank in *Schmidt*, had its PPB and main office in the same state. *American Surety v. Bank of Cal.*, 44 F.Supp. 81, 82 (D. Or. 1941).  Again, if the Supreme Court could not decide if the PPB test belongs in § 1348 under the same fact pattern, how can *American Surety*.  *See Mireles*, at **69, fn. 116 (distinguishing *Firstar* and *Horton* on similar grounds).

Tellingly, unlike *Rouse,* even *Firstar* and *Horton* did not read *American Surety* as supporting their positions.  *Firstar*, at 989, fn. 3 ("For the reasons explained near the end of this opinion, we deviate from *American Surety* …by concluding that national banks potentially can be citizens of two states for diversity purposes.")(emphasis added); *Horton*, at 431 ("*See also Am. Sur. Co. v. Bank of Ca., 133 F.2d 160, 161-62*

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   (9th Cir. 1943)(holding national bank with <u>branch in Oregon was not citizen thereof</u> for

2   diversity purposes under predecessor of section 1348)")(emphasis added).

3        Second, *American Surety* only resorted to a corporation's citizenship as an

4   "analogy" because "[N]o case defining 'located'… has come to our attention."

5   *American Surety*, at 161.  The Supreme Court's landmark decision in *Schmidt* makes

6   this rationale no longer viable.

7        Finally, interstate branches for national banks were prohibited until 1994, unless

8   grandfathered in as converted state chartered banks (*Schmidt*, at 307, fn. 2), probably

9   like the bank in *American Surety*.  Given the obsolete banking background in which

10  *American Surety* was decided, it has limited value today.

11       **B.**    <u>*American Surety* Likely Used the "Principal Place of Business" Phrase as a</u>

12           <u>Convenient Substitute for State of Incorporation, Adding Nothing to</u>

13           <u>*Schmidt*</u>

14       Perhaps most puzzling is *American Surety*'s statement, made in 1943, that the

15  "citizenship of a corporation is fixed by its <u>principal place of business</u>."  *Id.* (emphasis

16  added).  Taken <u>at face value, this is clearly a misstatement of the law</u>.

17       In *Hertz*, the Supreme Court undertook an extensive historical analysis of the

18  origins of the citizenship of state-chartered corporations and found that from 1854 to

19  1957, corporations were only citizens of their state of incorporation.  *Hertz*, at 1189-90.

20  It was not until 1958 that the PPB test for corporations was created purely by statute.

21  *Id.*, at 1190 ("in 1958, Congress both codified the <u>courts' traditional</u> place of

22  incorporation test and also <u>enacted into</u> law …[the] 'principal place of business'

23  language.")(emphases added); *accord Schmidt*, at 306 ("A business organized as a

24  corporation, for diversity jurisdiction purposes, is 'deemed to be a citizen of any State

25  by which it has been incorporated' <u>and, since 1958, also</u> 'of the State where it has its

26  principal place of business.' § 1332(c)(1).")(emphasis added).

27       <u>Conceding this point</u>, *Rouse* posited that *American Surety* used PPB in

28  "conflation" with the state of incorporation because at that time, most corporations were

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

incorporated and had their PPB in the same state.  *Rouse*, at *27.  This is bolstered by the fact that the two cases cited by *American Surety* for citizenship, *St Louis & San Francisco Ry. Co., supra* (1896)*,* and *Southern Ry. Co. v. Allison, supra* (1903), both held that the state of incorporation was the state of citizenship.

In fact, as recently as 1928, only fifteen (15) years before *American Surety*, the Supreme Court held that the state of incorporation was the test for citizenship, even if it appeared that the corporation had purposefully incorporated in a state different from which they did business to take advantage of diversity jurisdiction.  *Black & White Taxicab v. Brown & Yellow Taxicab*, 276 U.S. 518, 524 (1928)("In these circumstance, courts will not inquire into motives when deciding concerning their jurisdiction.").

Given the state of caselaw in 1943, it does not seem reasonable that the Ninth Circuit would have committed clear error on this settled point of law.  Therefore, *American Surety*, placed in its proper historical context, was likely using the "principal place of business" phrase merely as a convenient substituted for state of incorporation.

Naturally, because national banks are federally chartered, they do not have, strictly speaking, a "state of incorporation."  "The best analog to [the state of incorporation] is the state designated in a national bank's articles of association as the location of its main office."  *Mireles*, at *68; accord *Firstar*, at 993-94 ("While a national bank is not incorporated in a state, the organization certificate described in 12 U.S.C. § 22 serves a function similar to a certificate of incorporation.").

This reading of *American Surety*, which Wells Fargo submits is the proper one, simply adds nothing to *Schmidt*.  However, *Rouse* went on to hold: "To the extent the holding in *Schmidt* differed from *American Surety* at all, it did so only insofar as it provided <u>an additional basis for citizenship</u>."  *Id.*, at *37 (emphasis added).  Since the Ninth Circuit likely meant to say "state of incorporation," when it used the "principal place of business" phrase, *American Surety* does not provide the "additional basis" for citizenship as *Rouse* had held.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

**C.**   If *American Surety* Used "Principal Place of Business" as a Distinct
Concept, Then it is "Clearly Irreconcilable" with Supreme Court Precedent.

If however, *American Surety* used the "principal place of business" phrase as
separate and distinct from state of incorporation, then it was almost immediately
abrogated in 1946, if it was ever valid, when the Supreme Court held: "For purposes of
jurisdiction a corporation is a citizen or resident <u>only</u> of the state of its organization."
*Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, fn. 2, 442 (1946)(emphasis
added). *Murphree* makes *American Surety* "clearly irreconcilable" on the citizenship
issue and thereby abrogating the later. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir.
2003)( where "clearly irreconcilable," intervening Supreme Court authority implicitly
overrules prior Ninth Circuit decision).

Also, it is important to note that *Schmidt*'s mention of the PPB test was <u>always</u>
<u>together with</u> the main office test. *Id*. at 317, 318 fns. 8 & 9. However, in 1943,
because neither interstate banking (*id.*, at 307, fn. 2) nor two-state citizenship even for
corporations were allowed (*id.*, at 306), *American Surety*'s use of PPB (unless as a
substitute for state of incorporation or main office) must have meant <u>PPB as the only</u>
test for citizenship. Indeed, *American Surety* does not discuss the possibility of using
the main office.

In this second scenario, *American Surety* has also been abrogated by *Schmidt*,
which mandated that the main office test must be used. *Schmidt*, at 307, 318.

Just recently, the Court in *Flores*, held exactly that:

**B. *Schmidt* Abrogated American *Surety***

\* \* \* [¶]

<u>*American Surety*</u> cannot be reconciled with the Supreme Court's decision in
<u>*Schmidt*</u>. The *American Surety* court held that '[t]he trial court was right in
holding that defendant is a citizen *only* of the state in which its principal
place of business is located, the State of California.' 133 F.2d at 162
(emphasis added). In other words, *American Surety* held that the principal

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

place of business rule is <u>the exclusive test for citizenship of national banks</u>
for diversity jurisdiction purposes. In *Schmidt*, in contrast, the Supreme
Court interpreted the same word—"located"—to mean that a national bank
is a citizen of the state in which its main office, as set out in its articles of
association, is located. 546 U.S. at 307. Thus, *Schmidt* <u>conflicts with</u>
*American Surety*.

*Flores*, at ** 6, 7 (original bold & italics, underline added).

    *Flores* also pointed out that amongst the many uses of the word "located" in the
National Bank Act, none of those uses refers to the PPB, counseling against including
PPB in the meaning of "located." *Id*., at * 6. In fact, as briefed above, part of the
National Bank Act (at § 36(g)(3)(B)) actually links "main office" with "located," under
the definition of "home State."

    In short, *American Surety* simply cannot be "reconciled" with *Murphree* nor
*Schmidt* to provide the PPB as an <u>additional</u> test to *Schmidt*'s main office test.

### 7.   <u>APPLYING THE PPB TEST REQUIRES AN ACT OF CONGRESS</u>

    Ultimately, *Rouse, Firstar* and *Horton* would all effect a significant amendment
to § 1348, making a national bank a citizen of the state of its main office, as designated
in its articles of association, <u>and if different, also of the state of its PPB</u>.

    Unacknowledged by those cases, this would essentially replace § 1348 with 28
U.S.C. § 1332(c)(1), which provides "a corporation shall be deemed to be a citizen of
any State by which it has been incorporated and of the State where it has its principal
place of business." Such a drastic re-writing of § 1348 more than 60 years later should
be done by Congress, not the Court. *Accord Mireles*, at *68 ("<u>one can only speculate as
to what Congress' intent</u> would have been had it known that the citizenship of state
banks would be changed decades in the future.")(emphasis added).

    Recent legislation shows that applying the PPB test to non-corporations requires
an act of Congress. In 2005, Congress amended § 1332 as part of the Class Action
Fairness Act ("CAFA"). It fixed the citizenship of an "unincorporated association" to

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

its "State where it has its principal place of business and the State under whose laws it is organized" (28 U.S.C. § 1332(d)(10)), which parallels that of corporations. The Fourth Circuit held that § 1332(d)(10) applies to limited liability companies ("LLCs") in CAFA class actions <u>only</u>. *Ferrell v. Express Check Advance of SC, LLC*, 591 F.3d 698, 702 (4th Cir. 2010).

In fact, the Fifth Circuit held that the special CAFA diversity statute was an additional reason <u>not</u> to extend the PPB test to LLCs in regular lawsuits. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). *Harvey,* at 1080. That rationale applies with even greater clarity to federally chartered national banks.

It is also notable that *Firstar* (2001) and *Horton* (2004), which purported to judicially apply the PPB test, were both decided before the 2005 enactment of § 1332(c)(10) by Congress.

Prior to the enactment of § 1332(d)(10), the Supreme Court had refused to apply the PPB test to limited liability partnerships, deciding to leave that decision to Congress. *Carden v. Arkoma Associates*, 494 U.S. 185, 197 (1990)("such accommodation is performed more legitimately by Congress than by courts…"); accord *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006)(no corporate citizenship treatment for LLCs).

If the PPB test for citizenship created by § 1332(c)(1), the citizenship statute for state-chartered corporations, cannot be applied to state-chartered LLCs, it surely cannot be applied to federally-chartered national banks. National banks are heavily regulated by the federal government. *See* 12 U.S.C. §§ 1-216d.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CASE NO.: 8:11-CV-01052-JST-RNB
RESPONSE TO OSC

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

# 8.   CONCLUSION

For all the foregoing reasons, the OSC should respectfully be discharged.

Respectfully submitted,

Dated:  April 30, 2012          ANGLIN, FLEWELLING, RASMUSSEN,
                                CAMPBELL & TRYTTEN LLP


By:    _____*/s/ Yaw-Jiun (Gene) Wu*_____
                                Yaw-Jiun (Gene) Wu
                                Attorneys for Defendant
                                WELLS FARGO BANK, N.A. (and its division
                                WACHOVIA MORTGAGE), formerly known
                                as Wachovia Mortgage, FSB ("Wells Fargo").

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1

## CERTIFICATE OF SERVICE

2     I, the undersigned, declare that I am over the age of 18 and am not a party to this
action.  I am employed in the City of Pasadena, California; my business address is
3     Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue,
Suite 600, Pasadena, California  91101-2459.

4
5     On the date below, I served a copy of the foregoing document entitled:

## DEFENDANT WELLS FARGO'S RESPONSE TO
6     ## ORDER TO SHOW CAUSE RE LACK OF FEDERAL JURISDICTION

7     *Served Via The Court's CM/ECF System:*

8     *Counsel for Plaintiff:*                    *Counsel for Defendant,*
                                                *CAL-WESTERN RECONVEYANCE*
9                                                *CORPORATION*

10    Walter Hackett, Esq.
      Darrell Moore, Esq.
11    Irene C. Morales, Esq.                     Michele Mierzwa, Esq.
      INLAND COUNTIES LEGAL SERVICES             Victoria E. Adams, Esq.
12    1040 Iowa Avenue                           CAL-WESTERN RECONVEYANCE
      Riverside, California  92507               CORPORATION,
13                                               *A Prommis Solutions Company*
                                                 525 East Main Street
14    Telephone: (951) 368-2555                  El Cajon, California  92020
      Facsimile: (951) 368-2550                  Tel: (619) 590-9200, ext. 1193
15                                               Email:  michelle.mierzwa@prommis.com
16                                               victoria.adams@prommis.com

17

18    ☒   **FEDERAL:**   I declare that I am employed in the office of a member of the
      Bar of this Court at whose direction the service was made.  I declare under
19    penalty of perjury under the laws of the United States of America that the
      foregoing is true and correct.
20

21    This declaration is executed in Pasadena, California on **April 30, 2012.**

22

23    Lina C. Velasquez                          */s/ Lina C. Velasquez*
      (Type or Print Name)                       (Signature of Declarant)

24

25

26

27

28

W:\LITIG\95451\000559\00380759.DOCX

CASE NO. 8:11-CV-01052-JST-RNB
CERTIFICATE OF SERVICE